UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SANRIO, INC.

        Plaintiff,

BLING JEWELRY, INC., INTERNET
JEWELRY OF FLORIDA, INC. AND
ELENA CASTANEDA,

        Defendants.

_____/

CASE NO.:

COMPLAINT FOR COPYRIGHT
INFRINGEMENT, TRADEMARK
INFRINGEMENT, AND UNFAIR
COMPETITION

## COMPLAINT

Plaintiff, Sanrio, Inc., by and through its undersigned attorneys, alleges for its Complaint as follows:

## INTRODUCTION

1.    Plaintiff files this action to combat the intentional infringement, with willfulness and/or reckless disregard of its copyrighted properties and trademarks by Defendants Bling Jewelry, Inc. d/b/a Bling Jewelry a/k/a blingjewelry.com a/k/a overstockjewelry.com; Internet Jewelry of Florida, Inc. d/b/a overstockjewelry.com, and Elena Castaneda (hereinafter collectively referred to as "Defendants"). Defendants own, operate and manage an online jewelry store which imports, sells, offers for sale, and distributes jewelry and accessories that incorporate Plaintiff's copyrighted and trademarked properties without the permission of Plaintiff.

2.      Plaintiff seeks to halt Defendants' infringement of Plaintiff's intellectual properties and seeks a permanent injunction, damages, costs, and attorneys' fees as authorized by the Copyright Act and Lanham Act.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a) as the Plaintiff's cause of action arises under the United States Copyright Act of 1976, 17 U.S.C. § 101 *et. seq.* (the "Copyright Act") and the Federal Trademark Act, 15 U.S.C. § 1051 *et. seq.* (the "Lanham Act").

4.      Venue is proper within the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b); 1400(a), since the Defendants have advertised, offered for sale, shipped and/or sold infringing product in this District. This Court may properly exercise personal jurisdiction over Defendants as they operate an interactive website which directly target business activities toward consumers in Florida and causes harm to Plaintiff's business within this Judicial District. Each of the Defendants is committing tortious acts in Florida, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Florida. Based on these actions this Court has personal jurisdiction over each of the Defendants.

## THE PARTIES

### Plaintiff

5.      Plaintiff, Sanrio, Inc. (hereinafter referred to as "Sanrio" or "Plaintiff"), is a corporation, duly organized and existing under the laws of the State of California, having its principal place of business in South San Francisco, CA. Sanrio is a wholly owned

subsidiary of Sanrio Company, Ltd. Sanrio Company, Ltd. is a corporation organized under the laws of Japan, having its principal place of business in Tokyo, Japan (hereinafter referred to as "Sanrio Company").

        A.    For more than fifty years, Sanrio Company has been engaged in the business of manufacturing, distributing and selling a wide range of products including, without limitation, character artwork created, developed and designed by Sanrio Company for use by children and young adults. Certain of the characters and designs have achieved such global fame and popularity that Sanrio Company has produced and distributed television programming for children based on the character artwork.

        B.    A significant source of revenue for Sanrio Company is the merchandising and licensing of distinctive elements bearing character artwork, including Hello Kitty, Tuxedosam, Bad Badtz-Maru, Chococat, KeroKeroKeroppi, and My Melody (hereinafter individually and collectively referred to as the "Sanrio Company Characters").

        C.    The revenue from products using the Sanrio Company Characters sold in the United States is substantial. The appearance and other features of Sanrio Company's intellectual property are inherently distinctive and serve to identify Sanrio Company as the source of products bearing the Sanrio Company Characters. The design, configuration and distinctive features of the Sanrio Company Characters and other Sanrio Company copyrighted works, and of works related thereto (hereinafter individually and collectively referred to as the "Sanrio Company Copyrighted Designs") are wholly original with Sanrio Company and, as fixed in various tangible media,

including, without limitation, merchandise, are copyrightable subject matter under the Copyright Act. Sanrio Company is the owner of the Sanrio Company Copyrighted Designs and, as featured on and in connection with various merchandise, these designs constitute copyrightable subject matter under the Copyright Act.

D.     Sanrio Company has complied in all respects with the laws governing copyright and has secured the exclusive rights and privileges in and to the copyrights to the Sanrio Company Copyrighted Designs, and Sanrio Company owns one or more certificates of registration for works in which the Sanrio Company Copyrighted Designs appear. A representative sample of copyright registrations for the Sanrio Company Copyrighted Designs are indexed in Exhibit A. Products bearing the Sanrio Company Copyrighted Designs have been manufactured, sold and distributed by Sanrio Company or under its authority, and in conformity with the provisions of copyright law. Sanrio Company and those acting under its authority have complied with their obligations under such copyright laws.

E.     Sanrio Company owns all right, title and interest in and to and holds exclusive rights to develop, manufacture, market, and sell products bearing the trademarks, trade names, service marks, artwork, characters, and other distinctive elements for and incorporating Sanrio Company's Characters.

F.     Sanrio Company is the owner of world famous registered marks which serve to distinguish Sanrio Company's products. Some of those trademarks have been used continuously for over twenty-five (25) years. Each year Sanrio Company spends millions of dollars to develop and maintain the considerable good will it enjoys

4

in its trademarks and in its reputation for high quality. A representative sample of trademark registrations for Sanrio Company's Characters is indexed in Exhibit B. (hereinafter collectively referred to as the "Sanrio Company Trademarks").

G.      The Sanrio Company Trademarks are all valid, extant and in full force and effect. The Sanrio Company Trademarks are all exclusively owned by Sanrio Company. Sanrio Company has continuously used each of the Sanrio Company Trademarks from the registration date, or earlier, until the present, and at all times with such use being relevant to the claims alleged in this Complaint.

H.      As a result of advertising and sales, together with longstanding consumer acceptance, the Sanrio Company Trademarks identify Sanrio Company's products and authorized sales of these products. The Sanrio Company Trademarks have each acquired secondary meaning in the minds of consumers throughout the United States and the world.

I.      Sanrio, as the exclusive United States licensee for Sanrio Company, is authorized to enforce all right, title and interest in and to the Sanrio Company Copyrighted Designs as well as the Sanrio Company Trademarks (hereinafter collectively referred to as the "Sanrio Company Properties"). Through Sanrio, Sanrio Company has authorized and licensed the manufacture and sale of various different types of product that bear the Sanrio Company Properties, including but not limited to, jewelry, accessories and similar products.

Defendants

6.      Defendant, Bling Jewelry, Inc. d/b/a Bling Jewelry a/k/a blingjewelry.com a/k/a overstockjewelry.com (hereinafter "BLING"), upon information and belief, is a Delaware corporation which has a principal place of business at 165 East 72nd Street, PHC, New York, New York, which also does business at 1261 Broadway, Suite 1002, New York, New York 10021, and which does business in Florida and this District.

7.      Defendant, Internet Jewelry of Florida, Inc. d/b/a overstockjewelry.com (hereinafter "IJF"), upon information and belief, is a Florida corporation which has its principal place of business at 1261 Broadway, Suite 1002, New York, New York 10021, and which does business in Florida and this District.

8.      Defendant, Elena Castaneda (hereinafter "Castaneda"), upon information and belief, is an individual residing at 165 East 72nd Street, PHC, New York, New York 10021, the President of BLING and IJF, and has the right and ability to supervise or control the infringing activity alleged herein and a direct financial interest in such activity. Castaneda is the moving, active and conscious force behind BLING and IJF.

9.      Defendants BLING, IJF and Castaneda will collectively be referred to as "Defendants" or "Bling Jewelry".

INFRINGING CONDUCT

10.     Defendants operate an online jewelry store which imports, offers for sale, sells and distributes unauthorized jewelry and jewelry accessories bearing Sanrio Company Copyrighted Designs and Sanrio Company Trademarks (hereinafter referred to as the "Unauthorized Merchandise").

11.     Defendants sell, distribute and offer for sale the Unauthorized Merchandise through websites located at blingjewelry.com, their fully interactive sales site, and overstockjewelry.com, which redirects Internet traffic to blingjewelry.com (hereinafter individually and collectively referred to as the "Commercial Website"). Screenshots of the Unauthorized Merchandise as offered for sale through the Commercial Website are attached collectively as Exhibit C.

12.     Defendants have offered to sale, distributed, and sold Unauthorized Merchandise through their Commercial Website into Florida and this District. Samples of Unauthorized Merchandise purchased from the Defendants in Florida and this District are attached as Exhibits D, E and F.

13.     Defendants' Commercial Website indexes the Unauthorized Merchandise, including the samples attached as Exhibits D, E and F, on its website under the key words "Hello Kitty" and "Hello Kitty Charms". Screenshots of these key words as utilized on the Commercial Website are attached collectively as Exhibit G.

14.     Defendants market, advertise, promote, sell and offer for sale Unauthorized Merchandise through their Facebook page located at www.facebook/blingjewelry.com (hereinafter "Facebook"). Screenshots of promotional photographs of the Unauthorized Merchandise on Facebook are attached collectively as Exhibit H.

15.     Defendants have also offered for sale, sold and distributed Unauthorized Merchandise through the Amazon.com online sales platform (hereinafter "Amazon") as third-party sellers. Screenshots of sample offers for sale through Amazon are attached collectively as Exhibit I. As with its own website, Defendants have indexed the

7

Unauthorized Jewelry on Amazon under the key word "Hello Kitty". See Exhibit J. Additionally, as part of the sale, promotion, advertising, offer for sale of the Unauthorized Jewelry through Amazon, Bling Jewelry has utilized Amazon's fulfillment services. Through this arrangement, Bling Jewelry has hired Amazon to warehouse and inventory Unauthorized Merchandise which Amazon then utilizes to fulfill purchases made from Bling Jewelry. As part of these fulfillment services Amazon also physically transports the Unauthorized Merchandise to unsuspecting purchasers located throughout the United States including Florida and this District.

16.     On September 26, 2017, Sanrio sent a cease and desist letter to Bling Jewelry demanding that they immediately cease in the further importation, advertising, marketing, promoting, distribution, offering for sale, and sale of the Unauthorized Merchandise (hereinafter the "First Letter"). See Exhibit K. The First Letter demanded the following from Bling Jewelry: (a) that it immediately cease in the further importation, manufacture, advertising, marketing, promotion, offer for sale or sale of Unauthorized Merchandise; (b) surrender all remaining Unauthorized Merchandise in its possession or control; (c) remove the Sanrio Properties from all websites, sales storefronts and/or social media pages operated or otherwise controlled by Bling Jewelry, including but not limited to its Commercial Website, Amazon and Facebook; (d) provide complete source information on the Unauthorized Merchandise; and (e) provide an accounting of its sales and purchased of the Unauthorized Merchandise. *Id.* The First Letter put Bling Jewelry on actual notice of Sanrio's rights and Bling Jewelry's infringing conduct.

17.    While Bling Jewelry provided no written response to the First Letter it did remove certain Unauthorized Jewelry from its Commercial Website and the Amazon online sales platform. Notwithstanding these partial remedial actions, Bling Jewelry continued to sell, offer for sale, advertise and distribute Unauthorized Merchandise in conjunction with the "Hello Kitty" key word mark through its Commercial Website, Amazon and Facebook.  Likewise, Bling Jewelry ignored the lawful requests to turn over the remaining inventory of Unauthorized Merchandise, remove the Sanrio Properties from its online presence, provide source information concerning the Unauthorized Merchandise, and a complete an accounting of its sales and distribution of the Unauthorized Merchandise.

18.    On October 12, 2017, Sanrio sent a second letter to Bling Jewelry reiterating its prior demands. See Exhibit L. Again, Bling Jewelry removed some of the Unauthorized Merchandise from its Commercial Website and Amazon but otherwise failed to comply with Sanrio's demands. *Id.* Upon information and belief Bling Jewelry continues to offer for sale, distribute, sell, advertise, and market Unauthorized Merchandise through its Facebook page and Amazon.

19.    Plaintiff has never permitted Bling Jewelry to import, advertise, promote, distribute, offer for sale, or sell the Unauthorized Merchandise.

COUNT I - COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

20.    Plaintiff incorporates by reference the allegations in the above Paragraphs as if fully set forth herein.

21.     Defendants are importing, advertising, marketing, promoting, distributing, offering for sale, and selling Unauthorized Merchandise that incorporates unauthorized reproductions and/or copies of the Sanrio Company Copyrighted Designs, including, but not limited to the Hello Kitty character. Photographs of samples of the Unauthorized Merchandise are shown on Exhibits C through J.

22.     Defendants have never been authorized to import, advertise, market, promote, distribute, offer for sale, and/or sell the Unauthorized Merchandise, which incorporates the Sanrio Company Copyrighted Designs.

23.     Defendants' conduct, described above, infringes upon the Sanrio Company Copyrighted Designs. Defendants had both actual and constructive knowledge of Plaintiff's exclusive rights. Each specific infringement of the Sanrio Company Copyrighted Designs can form the basis for a separate claim against Defendants under the Copyright Act.

24.     Upon information and belief, Defendants acted willfully and/or with reckless disregard of Plaintiff's rights, and Defendants' infringements have irreparably harmed the Sanrio Company Copyrighted Designs and threaten further infringement and further irreparable harm to the Sanrio Company Copyrighted Designs. Further harm to Plaintiff is imminent, and Plaintiff is without an adequate remedy at law with respect to such harm. Unless Defendants' acts are enjoined and the illicit counterfeiters of the Sanrio Company Copyrighted Designs are stopped, it is highly probable that Defendants, or others under Defendants' direction, will continue to market and sell the Unauthorized Merchandise.

25.     Defendants have obtained illicit profits as a result of their wrongful acts.

26.     Plaintiff is entitled, at its option, to statutory damages as provided by 17 U.S.C. § 504, or actual damages and Defendants' profits.

### COUNT II - TRADEMARK INFRINGEMENT AND TRADEMARK COUNTERFEITING (15 U.S.C. §§ 1114; 1116)

27.     Plaintiff incorporates by reference the allegations in the above Paragraphs as if fully set forth herein.

28.     Plaintiff is the licensee of the exclusive rights to the Sanrio Company Trademarks, indexed as Exhibit B, which are in full force and effect. Many of the Sanrio Company Trademarks are incontestable pursuant to 15 U.S.C. § 1065.

29.     Plaintiff, or those under its authority, manufacture, sell and distribute all of its advertising and products in conformity with the provisions of United States trademark law.

30.     Notwithstanding Plaintiff's well-known, prior common law and statutory rights, Defendants have, with actual and constructive notice of Plaintiff's rights, adopted and used the Sanrio Company Trademarks in conjunction with importing, advertising, marketing, promoting, distributing, offering for sale, and selling the Unauthorized Merchandise in the State of Florida and in interstate commerce.

31.     Defendants have marketed and sold the Unauthorized Merchandise bearing the Sanrio Company Trademarks or utilized the Sanrio Company Trademarks to identify the Unauthorized Merchandise without Plaintiff's authorization. Defendants' unauthorized use of the Sanrio Company Trademarks, both in the State of Florida and in

interstate commerce, has and will continue to cause a likelihood of confusion, deception and mistake as to Plaintiff's affiliation with Defendants.

32.     Defendants' use in commerce of the Sanrio Company Trademarks in conjunction with the Unauthorized Merchandise is an infringement of the Sanrio Company Trademarks in violation of 15 U.S.C. § 1114(1).

33.     Defendants committed the acts alleged herein willfully and/or with reckless disregard of Plaintiff's rights.

34.     Said acts of infringement will cause irreparable injury to Plaintiff if Defendants are not enjoined by the Court from further violation of Plaintiff's rights, as Plaintiff has no adequate remedy at law.

35.     Plaintiff has suffered damages as a result of Defendants' acts.

### COUNT III - UNFAIR COMPETITION UNDER THE LANHAM ACT
### (15 U.S.C. § 1125)

36.     Plaintiff incorporates by reference the allegations in the above Paragraphs as if fully set forth herein.

37.     As a direct result of Plaintiff's longstanding use, sales, advertising, and marketing, the Sanrio Company Properties have acquired a secondary and distinctive meaning among the public who have come to identify the Sanrio Company Properties with Plaintiff and its affiliated companies.

38.     Defendants misappropriated the Sanrio Company Properties in order to confuse the public into believing that their conduct was authorized by Plaintiff.

39.     Defendants, by misappropriating and using the likenesses of the Sanrio Company Properties in connection with the importation, advertising, marketing,

promoting, distributing, offering for sale, and selling of the Unauthorized Merchandise, are misrepresenting and will continue to misrepresent and falsely describe to the general public the origin and sponsorship of the Unauthorized Merchandise.

40.     Defendants have caused such Unauthorized Merchandise to enter into interstate commerce with reckless disregard of Plaintiff's rights, and/or willfully with full knowledge of the falsity of the designation of their origin, description and representation in an effort to mislead the purchasing public into believing that such products are authorized, or otherwise emanate from Plaintiff.

41.     These acts constitute a violation of Section 43 of the Lanham Act (15 U.S.C. § 1125).

42.     Defendants have obtained gains, profits and advantages as a result of their unlawful acts.

43.     Plaintiff has suffered monetary damages as a result of Defendants' acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands entry of a judgment against Defendants as follows:

1.     Permanent injunctive relief restraining Defendants, their officers, agents, servants, employees, attorneys, and all those in active concert or participation with them, from the following acts:

    a.     Importing, advertising, marketing, promoting, distributing, offering for sale, and selling, or otherwise brokering the Unauthorized Merchandise;

    b.     Using the Sanrio Company Properties in any unauthorized manner;

13

c.      Making any false statement or representation to suggest that Defendants are affiliated with, or otherwise sponsored by Plaintiff;

d.      Engaging in any other activity constituting unfair competition or infringement of any of the Sanrio Company Properties, or dilution of Plaintiff's name, reputation and/or goodwill;

e.      Effecting assignments or transfers, forming new entities or associations and/or using any device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs a through d;

f.      Destroying or disposing of any evidence of Defendants' importation, advertising, marketing, promoting, distributing, offering for sale, and selling of the Unauthorized Merchandise, or Defendants' unauthorized use of the Sanrio Company Properties; and

g.      Aiding, abetting, or contributing to the importation, advertising, marketing, promoting, distributing, offering for sale, and sale of the Unauthorized Merchandise, or the unauthorized use of the Sanrio Company Properties.

2.      Directing that Defendants immediately cease the importing, advertising, marketing, promoting, distributing, offering for sale, and sale of Unauthorized Merchandise.

3.      Directing that Defendants deliver for destruction all Unauthorized Merchandise and/or infringing products in their possession or under their control,

bearing any of the Sanrio Company Properties, or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof.

4.      Directing that Defendants report to this Court within thirty (30) days after a Permanent Injunction is entered to show its compliance with Paragraphs 1 through 3 above.

5.      Directing such other relief as the Court may deem appropriate to prevent the trade and public from gaining the erroneous impression that Plaintiff authorized, or is related in any way to any products imported, advertised, marketed, promoted, distributed, offered for sale, and sold by Defendants.

6.      Awarding to Plaintiff from Defendants, as a result of Defendants' importing, advertising, marketing, promoting, distributing, offering for sale, and selling, or otherwise brokering the Unauthorized Merchandise bearing the Sanrio Company Trademarks, three times Defendants' profits after an accounting, or statutory damages, should Plaintiff opt for such relief, consisting of Two Hundred Thousand Dollars ($200,000.00) for each of Plaintiff's trademarks infringed upon by Defendants, and to the extent this Court concludes such infringement was willful, Two Million Dollars ($2,000,000.00) for Plaintiff's trademarks infringed upon by Defendants pursuant to 15 U.S.C. §§ 1114; 1117(b-c).

7.      Awarding to Plaintiff three times Defendants' profits after an accounting, pursuant to 15 U.S.C. §§ 1125(a); 1117(a).

8.      Awarding to Plaintiff statutory damages, pursuant to 17 U.S.C. § 504(c), of no less than Seven Hundred and Fifty Dollars ($750.00), nor any more than Thirty

Thousand Dollars ($30,000.00) per copyrighted property infringed upon by Defendant, at the Court's discretion, or One Hundred and Fifty Thousand Dollars ($150,000.00) per infringement upon a finding that Defendant's conduct was willful.

9.    Awarding to Plaintiff its reasonable attorneys' fees and investigative fees pursuant to 15 U.S.C. § 1117.

10.    Awarding to Plaintiff its costs in bringing this action.

11.    Awarding to Plaintiff other such relief as this Court deems just.

Dated this 14th day of December 2017.

Michael W. O. Holihan
Florida Bar No.: 0782165
Kimberly A. Harchuck
Florida Bar No.: 0064852
Holihan Law
1101 North Lake Destiny Road
Suite 275
Maitland, Florida 32751
Telephone: (407) 660-8575
Fax: (407) 660-0510
michael.holihan@holihanlaw.com
kimberly.harchuck@holihanlaw.com
Attorneys for Plaintiff